DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellant the Estate of Edwin M. Berner, Jr. appeals from judgment in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} Edwin M. Berner, Jr. acted as a township trustee for Wellington Township from 1995 until 1999. In 1999, Berner lost the election and his opponent, Virginia Haynes, took his place as a township trustee. Berner continued to attend approximately ten to twenty township trustee meetings a year despite the fact that he was no longer a trustee. *Page 2 
 {¶ 3} In February 2005, Haynes attended a trustee seminar in Columbus and discovered that trustees could apply for community block grants to renovate certain buildings. Because the Wellington Township Board's meeting place was less than desirable, Haynes suggested the idea of applying for a block grant to the Board. At the time, the Township Board consisted of trustees Bill Brown, Virginia Haynes, and Calvin Woods.
 {¶ 4} At its February 15, 2005 meeting, the Board voted to "authorize Trustee Haynes and Clerk Nirode to review the block grant application and if so determined, to submit an application for building improvements[.]" On March 1, 2005, the Board approved the building project resolution. The resolution specified that Haynes and Nirode would: (1) apply for the grant and conduct a feasibility study to meet the grant application requirements, and (2) report to the trustees "on a regular basis and obtain approval on each stage of the grant application process." The resolution referred to Haynes and Nirode as the "Community Block Grant committee."
 {¶ 5} On March 10, 2006, Berner filed a complaint against Woods, Haynes, and Nirode in their official capacities. Berner sought statutory damages and injunctive relief for fourteen alleged violations of R.C.121.22. On September 25, 2006, Berner died and his Estate was substituted as the plaintiff in this matter.
 {¶ 6} On March 9, 2007, the trial court granted a motion for summary judgment in favor of Woods, Haynes, and Nirode. The Estate of Edwin M. *Page 3 
Berner, Jr. ("Estate") timely appealed from the judgment, raising one assignment of error for review.
 II Assignment of Error "THE TRIAL COURT ERRED WHEN IT HELD THAT DEFENDANTS' PRIVATE DELIBERATIONS REGARDING PUBLIC BUSINESS DURING (sic) DID NOT VIOLATE [R.C.] 121.22."
 {¶ 7} Estate argues that the trial court erred in granting summary judgment in favor of Woods, Haynes, and Nirode and finding that they did not violate R.C. 121.22. Specifically, Estate argues that the Wellington Township Board created a committee in its March 1, 2005 resolution and the committee violated the law by meeting and discussing public business in private. We disagree.
 {¶ 8} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. *Page 4 
The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 10} The materials properly before the trial court in a motion for summary judgment include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, and the pleadings. Civ.R. 56(C). If a document does not fall within one of these categories, it can be introduced as evidentiary material only through incorporation by reference in a properly framed affidavit pursuant to Civ.R. 56(E). DaimlerChrysler Servs. N. Am. v.Lennington, 9th Dist. No. 05CA0055, 2006-Ohio-1546, at ¶ 15-16. We have held, however, that if there is no objection to the improper evidence it is within the trial court's discretion to consider or to ignore it.Richardson v. Auto-Owners Mut. Ins. Co., 9th Dist. No. 21697,2004-Ohio-1878, at ¶ 29. This rule applies no matter which party submits the unauthenticated material. See *Page 5 DaimlerChrysler, supra (finding that the party moving for summary judgment failed to properly authenticate the materials in support of its motion); Bankers Trust Co. v. West, 9th Dist. No. 20984, 2002-Ohio-5028, at ¶ 15 (finding that the nonmoving party failed to oppose a motion for summary judgment with properly authenticated materials).
 {¶ 11} In the trial court below, both parties attached multiple email messages as exhibits in support of their motions. Estate, in particular, relied on the contents of the emails to infer that Nirode and Haynes had met in violation of the Sunshine Law. However, neither party properly authenticated the emails. A copy of an email message does not fall into any category of Civ.R. 56(C) evidence. Therefore, for the emails to be properly before the trial court they would have had to have been incorporated by reference in a properly framed affidavit.DaimlerChrysler at ¶ 15-16. Since neither party authenticated or objected to the introduction of the emails, the court had the discretion to either consider or ignore the emails. See Richardson at ¶ 29.
 {¶ 12} The trial court's journal entry only provides that:
 "Upon consideration of the depositions, affidavits, answers to interrogatories, and briefs submitted by the parties, the Court finds that * * *
 "Defendants Haynes and Nirode did not conduct any meeting within the meaning of [the Sunshine Law] in violation of [the Sunshine Law.]" *Page 6 
The journal entry does not specifically state that the court considered the emails in reaching its conclusion. To the contrary, the journal entry actually implies that the court did not consider the emails. If the court had considered the emails, it seems reasonable that the court would have included the emails in the specific list of items that it considered, including the depositions, affidavits, and interrogatories. In the absence of specific findings, "the trial court is presumed to consider only admissible evidence in reviewing a controversy to determine whether there are material facts in dispute." Barker v.Strunk, 9th Dist. No. 06CA008939, 2007-Ohio-884, at ¶ 15. Since nothing in the record suggests otherwise, we presume that the trial court followed Civ.R. 56 and did not consider the emails as evidence. See Civ.R. 56(C); (E) (requiring proper authentication of items not specifically set forth in the rule). Accordingly, we will not consider any of the unauthenticated emails in evaluating Estate's appeal.
 {¶ 13} R.C. 121.22 (the "Sunshine Law") provides in relevant part that:
 "(A) This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings * * *
 "(F) Every public body, by rule, shall establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings."
The statute defines "public body" as "any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making body of any * * * township; [or] [a]ny committee or subcommittee of [such] a *Page 7 
body[.]" R.C. 121.22(B)(1)(a)-(b). "Meeting" is defined as "any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(B)(2).
 {¶ 14} Initially, we note that Haynes and Nirode constituted a "committee" for purposes of the Sunshine Law. Our review of the case law has not revealed any court which has provided a comprehensive definition of "committee." Accordingly, we look to R.C. 1.42 which provides that, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." "Committee" is defined as "a body of persons delegated to consider, investigate, take action on, or report on some manner." Merriam-Webster's Collegiate Dictionary (11 Ed. 2004) 250. Because this definition encompasses the tasks that the Board assigned to Haynes and Nirode, they qualified as a committee. Additionally, neither party disputes that the Wellington Township Board itself constitutes a "public body" under R.C. 121.22(B)(1). Therefore, Haynes and Nirode, "[a] committee * * * of [such] a body," also constituted a "public body" pursuant to the Sunshine Law and were required to comply with its mandates. See R.C. 121.22(B)(1)(b).
 {¶ 15} The intent of the Sunshine law is to require governmental bodies to deliberate public issues in public. Moraine v. Montgomery Cty.Bd. of Commrs. (1981), 67 Ohio St.2d 139, 145. However, "deliberations" involve more than information-gathering, investigation, or fact-finding.Holeski v. Lawrence (1993), *Page 8 85 Ohio App.3d 824, 829. Webster's Third New International Dictionary (1961) 596, defines "deliberation" as "the act of weighing and examining the reasons for and against a choice or measure" or "a discussion and consideration by a number of persons of the reasons for and against a measure." Question-and-answer sessions between board members and other persons who are not public officials do not constitute "deliberations" unless a majority of the board members also entertain a discussion of public business with one another. Holeski, 85 Ohio App.3d at 830. In this context, a "discussion" entails an "exchange of words, comments or ideas by the board." (Emphasis omitted) Id., citing DeVere v. MiamiUniv. Bd. of Trustees (June 10, 1986), 12th Dist. No. CA86-05-065. A conclusive decision among board members on any measure, however, is not necessary to prove a violation. See State ex. rel Delph v. Barr (1989),44 Ohio St.3d 77, 81.
 {¶ 16} In its complaint, Estate claimed that Haynes and Nirode committed fourteen separate violations of the Sunshine Law by meeting with various people and entities to discuss the building project resolution. From our review of the record, we conclude that the trial court did not err in granting Woods, Haynes, and Nirode's motion for summary judgment.
 {¶ 17} To violate the Sunshine Law, a public body must simultaneously (1) conduct a "meeting" and (2) "deliberate" over "public business." See R.C. 121.22(B)(2); Holeski, 85 Ohio App.3d at 829-830. For there to be a "meeting" as defined by the Sunshine Law, a majority of a public body's members must come *Page 9 
together. R.C. 121.22(B)(2). Because Haynes and Nirode were the only members of the Community Block Grant committee, the Sunshine Law did not apply to any instances where only one of the two met with other people. Furthermore, the Sunshine Law did not apply to any meetings where Haynes and Nirode engaged solely in information gathering and fact-finding. Based on our review of the record and Estate's concession at oral argument, we have identified only one instance that could potentially fall under the purview of the Sunshine Law.
 {¶ 18} In their respective affidavits, Haynes, Nirode, and Daniel Barney, the architect the Township hired, admitted that they all met shortly before the January 2006 public meeting. Estate argues that Haynes and Nirode engaged in decision-making at this private meeting. However, each of the affidavits provided that the only topic discussed at the meeting was what procedure would be used to introduce Barney's proposal to the Board at the public meeting. Furthermore, Barney's affidavit provided, "[i]t was always my understanding that approval or acceptance of changes needed to be made by the Board of Trustees and not by Nirode and/or Haynes." The record reflects that when Haynes and Nirode met their encounters amounted to nothing more than information-gathering, investigation, or fact-finding. SeeHoleski, supra. Estate did not produce any evidence that might raise a genuine issue of fact as to the substance of their encounters. SeeHenkle, 75 Ohio App.3d at 735 (discussing a non-movant's reciprocal burden when opposing a motion for summary judgment). *Page 10 
 {¶ 19} Much of Estate's argument amounts to nothing more than speculation. It argues that Community Block Grant Committee must have met in private to make decisions because the building project advanced so quickly. Estate asks this Court to stack inference upon inference in order to conclude that Woods, Haynes, and Nirode conducted meetings at which they deliberated in violation of the Sunshine Law. We decline to do so. See State v. White (1999), 85 Ohio St.3d 433, 451 (declining to speculate where record does not contain evidence as to defendant's assertion). Because Estate failed to show a genuine issue existed for trial, the trial court did not err in granting summary judgment. Estate's sole assignment of error lacks merit.
 III {¶ 20} Estate's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 11 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, J., DICKINSON, J., CONCUR. *Page 1